### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| EUGENE HENDERSON, | ) CASE NO.  4:13-CV-2088 |
| | ) |
| Petitioner, | ) JUDGE CARR |
| | ) |
| v. | ) MAGISTRATE JUDGE VECCHIARELLI |
| | ) |
| EDWARD SHELDON, | ) |
| | ) **REPORT AND RECOMMENDATION** |
| Respondent. | ) |

This matter is before the magistrate judge pursuant to Local Rule 72.2(b)(2).

Before the court is the petition of Eugene Henderson, ("Henderson" or "Petitioner") for a

writ of habeas corpus filed pursuant to 28 U.S.C. § 2254.  Petitioner is in the custody of

the Ohio Department of Rehabilitation and Correction pursuant to journal entry of

sentence in the case of *State of Ohio vs. Henderson*, Case No. 09-CR-318 (Trumbull

County Aug. 4, 2010).  (Doc. No. 7-5.)  For the reasons set forth below, it is

recommended that the petition be dismissed with prejudice.

### I. Relevant Factual Background

The state appellate court that reviewed Petitioner's conviction and sentence

recited the following facts:

> This instant appeal is from a final judgment of the Trumbull
> County Court of Common Pleas. Appellant, Eugene M.
> Henderson, contests the propriety of his convictions on six
> felony charges, including two counts of aggravated murder.
> Each of the six offenses was based upon the role he played
> in a drive-by shooting at a residential home. One adult and
> one child died.

In March 2009, Brittnay McCoy was renting a small one-story residence on Wick Avenue in Warren, Ohio. Her two young children, Shaunice and Joshua, lived with her. The rental home was relatively close to the house belonging to Brittnay's parents; thus, her two younger siblings, Chelise and Lloyd, would often visit her in the evenings.

During this time frame, Brittnay was dating Marvin Chaney. Even though Chaney spent many nights with Brittnay at the Wick Avenue residence, he also stayed a few nights at a separate home on Pearl Street in Warren. The latter place was rented by Joe Williams, who allowed other individuals to stay at the home on occasion. Among the persons who periodically stayed at the Pearl Street home was appellant and Eugene Cumberbatch.

During the few days in which Chaney stayed at the Pearl Street residence, an incident occurred in which the sum of $3,000 was stolen from an individual living in the home. Immediately after this incident, Chaney left the Pearl Street home and never returned. In response, appellant and Cumberbatch began to take steps to find Chaney. They were joined in this endeavor by Marquis Frank, who was a cousin to Brittnay and her siblings.

On March 22, 2009, appellant, Cumberbatch, and Frank visited Brittnay at her parents' home on Wick Avenue. As part of their conversation, Frank asked Brittnay if she knew where Chaney was and if he had any significant money in his possession.

\* \* \*

Approximately three weeks later, on the evening of April 13, 2009, Brittnay was in her Wick Avenue residence with her two children, her sister Chelise, her brother Lloyd, and Chaney. At 9:50 p.m., Chelise was preparing to leave the residence through a side door, while Brittnay and Chaney were talking in the kitchen. The three children, including Lloyd, were playing on a sofa in the living room.

At that time, approximately 30 gunshots were directly fired at the front of Brittnay's home. One of the gunshots came from a 9mm handgun; the remaining shots were 7.62 caliber

2

bullets that are typically fired from an assault rifle, such as an AK–47. The majority of the 7.62 caliber bullets perforated the exterior front wall of the structure and went deep into the home, ravaging the furniture, appliances, and drywall. Forensic tests which were subsequently performed on the casings found at the scene established that all of the 7.62 caliber bullets were fired from the same rifle.

Three of the individuals inside the residence were hit during the onslaught of bullets. Brittnay's son, Joshua, was shot in the left forearm. Although Joshua needed surgery later to repair his arm, he survived the melee. Marvin Chaney suffered a fatal wound to his left chest. Despite the fact that Chaney was able to crawl from the kitchen to a bedroom in the rear of the home, he died almost immediately after the incident. Brittnay's younger brother, Lloyd, was also fatally shot in the chest. While Lloyd was able to live through the attack itself, he died eight days later at the age of ten.

Upon securing the entire crime scene, officers of the Warren City Police Department found 22 shell casings on Wick Avenue directly in front of Brittnay's residence. Of these, 21 were casings for the 7.62 caliber bullets; the other was a 9mm casing. In addition, the officers found on the roadway a pair of sunglasses and a cell phone.

Notwithstanding the evidence located at the scene, the police department did not initially have any suspects for the two murders. However, the department soon received a tip that a person named Marcus Yager had information regarding the crimes. Yager was a cousin of Marquis Frank, and a friend of both Eugene Cumberbatch and appellant. Even though Yager originally denied having any knowledge of the shootings, he eventually gave the police a detailed statement which primarily implicated appellant.

According to Yager, it was appellant's money that Chaney had stolen at Joe Williams' Pearl Avenue residence. After that event, appellant and Yager would try to find Chaney by driving around the city in borrowed vehicles. During some of their searches, appellant and Yager would be accompanied by Frank and Cumberbatch. Furthermore, they would always carry firearms with them whenever they drove through the city.

Regarding the events of April 13, 2009, Yager stated that,

after he, appellant, and Cumberbatch met at the Pearl Avenue residence, they decided to borrow the car of a person whom appellant had known while working at a car wash. In getting into the backseat of the car, Yager brought with him a 9mm handgun, which he then gave to Cumberbatch. With appellant operating the vehicle, the three men went around the city for nearly 40 minutes until appellant decided to drive by Brittnay's home on Wick Avenue. At that time, they saw a grey vehicle parked in the driveway.

Under Yager's version of the ensuing events, appellant immediately drove back to the Pearl Avenue residence and went into the basement of the structure while he and Cumberbatch waited in the car. A few moments later, appellant walked back to the car carrying an AK–47, and then drove back to the general vicinity of Wick Avenue. Upon driving past Brittnay's residence once, appellant turned the car around and began to pull directly in front of that house. Before coming to a stop, appellant handed a pair of sunglasses and a cell phone to Cumberbatch, and told Cumberbatch to immediately put the gear shift into "drive" when he got back into the car. After stopping the vehicle, appellant jumped out and began shooting the AK–47 rifle directly at the front of Brittnay's home. Cumberbatch also jumped from the vehicle and fired one shot toward the home, but the 9mm handgun then jammed and he tossed it back to Yager as he returned to the vehicle.

Finally, Yager indicated in his statement to the police that, in pulling away from Brittnay's residence, appellant asked Cumberbatch to return the cell phone to him. After patting his clothes, Cumberbatch stated that he must have dropped the cell phone and sunglasses while he was outside the car. This made appellant very upset, and he continued to rant about the cell phone once the three men returned to the Pearl Avenue residence.

\* \* \*

Upon the completion of the police investigation in June 2009, the Trumbull County Grand Jury returned a seven-count indictment against appellant. As to each of the two casualties in the shooting, the indictment had one count of aggravated murder under R.C. 2903.01(A) and one count of

4

murder under R.C. 2903.02(B). Regarding the injury suffered by Brittnay's son, Joshua McCoy, appellant was charged with felonious assault under R.C. 2903.11(A)(2). In addition, the indictment contained separate counts of improperly discharging a firearm at a place of habitation and possession of a firearm while under a disability. Finally, six of the seven counts also had a firearm specification under R.C. 2923 .11.

Appellant's jury trial was originally scheduled to proceed in July 2009. On three separate occasions over the ensuing eight months, appellant's counsel moved the trial court to continue the date of the trial. In each instance, the trial court granted the motion, and appellant executed a waiver of his rights to a speedy trial. His trial on the seven counts went forward in May 2010.

Before the process of selecting the jury began, appellant asked to speak to the trial court directly in its chambers. At that time, he moved for the appointment of new trial counsel and a fourth continuance of his trial. As the basis for this request, he asserted that, even though he had made inquiries on numerous occasions, his present trial counsel had not given him a copy of discovery provided by the prosecution until two days before trial. In light of this, appellant maintained that he had been denied the opportunity to properly consider the state's proposed plea bargain because he was not afforded ample time to review the evidence against him. Upon hearing responses from defense counsel and the prosecutor, the trial court basically concluded that appellant's present attorney was capable of providing adequate legal representation, and that the trial would go forward as scheduled.

During the actual trial, the state relied primarily upon the testimony of Joe Williams, Marcus Yager, and Jeffrey Selep, who was the person who "loaned" the vehicle to appellant on the evening of the incident. The state also presented expert testimony regarding the autopsies of the two murder victims and the tests performed on the evidence collected at the scene of the crimes. In response, appellant submitted the testimony of Sarah Eckles, a neighbor of Brittnay who lived approximately two-houses down on Wick Avenue. Ms. Eckles stated that, on the evening of the shooting, a young man knocked on her back door and asked to use her

telephone. She further stated that this man had blood on his hands and shirt. After the night of the incident, police officers showed her photographs of individuals who were allegedly suspects for the crimes, but she was never able to identify the man who was at her back door. Finally, Ms. Eckles confirmed in her testimony that appellant was not the man she had encountered.

At the close of the four-day trial, the jury returned a not guilty verdict on the "improperly discharging a firearm at a place of habitation" charge. The jury further found appellant not guilty on each of the firearm specifications contained under the six remaining counts. As to the main charges in the other six counts, though, appellant was found guilty. This included the two aggravated murder counts and the two murder counts.

After conducting a separate sentencing proceeding, the trial court ordered appellant to serve two consecutive sentences of life without parole on the two counts of aggravated murder. For purposes of sentencing, the two "murder" counts were merged into the two "aggravated murder" counts. Regarding the remaining counts of felonious assault and having a weapon while under a disability, the trial court sentenced appellant to separate terms of eight years and five years, respectively. In addition, the court held that the latter two terms would be served consecutive to each other and consecutive to the two life sentences.

*State v. Henderson*, NO. 2010-T-0095, 2012 WL 604475, **1-3 (Ohio App. Ct. Feb. 27, 2012).

## II. Relevant State Procedural History

### A.    Direct Appeal

In December 2010, Henderson, through new counsel, filed a direct appeal, in which he raised the following seven assignments of error (grammar and punctuation as in original except where bracketed):

> I.    The evidence manifestly weighed against Appellant's conviction for Aggravated Murder and Murder, as

6

demonstrated by the jury's acquittal of Appellant on all firearm specifications and the poor quality of evidence presented to overcome Defendant's presumption of innocence.

II.      The State failed to produce sufficient evidence to convict Mr. Henderson of Aggravated Murder and Murder, Having Weapons Under Disability, and Felonious Assault.

III.     The Trial Court abused its discretion when it proceeded to trial in violation of Appellant's right under the Sixth Amendment after Appellant requested a continuance to review evidence he had received just two days prior.

IV.     Defense Counsel provided ineffective assistance because it failed to provide discovery materials necessary for Appellant to consider his constitutional rights, including whether to proceed to trial.

V.      The Trial Court violated Appellant's right under Ohio law when it failed to properly apply the United States Supreme Court's recent ruling in *Oregon v. Ice*, [555 U.S. 129 (2009)].

VI.     Appellant was prejudiced when the jury observed him both under unnecessarily heavy guard and shackle, and when the Trial Court deferred to the Sheriff's department to allow such restraints.

VII.    The Prosecution Committed Misconduct Because it Improperly Shifted the Burden of Proof and Misstated Fact During Closing Arguments.

(Doc. No. 7-10.)

In February 2012, the state appellate court affirmed Petitioner's conviction and sentence. *Henderson*, 2012 WL 604475.  Thereafter, Henderson, *pro se*, filed a notice of appeal and memorandum in support of jurisdiction in the Ohio Supreme Court, in which he raised only the second (sufficiency of the evidence), third (trial court's failure

7

to grant continuance), and fourth (ineffective assistance of trial counsel) assignments of error.  (Doc. Nos. 7-16, 7-17.)  In July 2012, the Ohio Supreme Court declined jurisdiction and dismissed Henderson's appeal.  *State v. Henderson*, 969 N.E.2d 1230 (Table), 132 Ohio St.3d 1462 (Ohio 2012).

## C.    Application to Reopen

In June 2012, while his direct appeal was pending in the Ohio Supreme Court, Petitioner, *pro se*, filed an application to reopen his appeal pursuant to Rule 26(B) of the Ohio Rules of Appellate Procedure, alleging that his appellate counsel was ineffective in failing to argue that Henderson's trial counsel was ineffective in failing to request a jury instruction on the lesser- included offense of reckless homicide.  (Doc. No. 7-21.)  In January 2013, the state appellate court denied Petitioner's Rule 26(B) Application, concluding that Petitioner had not established that trial counsel's decision to forego such an instruction was the result of anything other than trial strategy.  (Doc. No. 7-23.)

Petitioner did not file a notice of appeal from the decision denying his Rule 26(B) Application.

## III. Proceedings in this Court

In September 2013, Henderson filed in this Court a § 2254 petition, in which he raises the following six grounds for relief (grammar and punctuation as in original):

> I.    The State failed to produce sufficient evidence to convict Mr. Henderson of Aggravated Murder and Murder, Having Weapons Under Disability, and Felonious Assault.  Their verdicts were therefore, inconsistent with the evidence presented.

8

II.     The Trial Court abused its discretion when it
        proceeded to trial in violation of Petitioner's right
        under the Sixth Amendment after Petitioner
        requested a continuance to review evidence he had
        received just two days prior to the trial.

III.    Defense Counsel provided ineffective assistance
        because it failed to provide discovery materials
        necessary for Appellant to consider his constitutional
        rights, including whether to proceed to trial.

IV.     The Trial Court abused its discretion when it allowed
        Mr. Henderson to be repeatedly escorted in view of
        the jury while under unnecessarily heavy restraints.

V.      The Prosecution committed misconduct because it
        improperly shifted the burden of proof and misstated
        facts during closing arguments.

VI.     Counsel was ineffective for failing to request the
        Court include an instruction to the Jury on Reckless
        Homicide, when the evidence presented at trial
        clearly supported a conviction on the lesser-included
        offense of Reckless Homicide.

(Doc. No. 1.)  The parties have completed briefing in this matter and so this petition is

ready for decision.

## IV. Procedural Issues

### A.     Jurisdiction

A state prisoner may file a § 2254 petition in "the district court for the district

wherein such person is in custody or in the district court for the district within which the

State court was held which convicted and sentenced him."  28 U.S.C. § 2241(d).  The

Court of Common Pleas of Trumbull County, Ohio sentenced Petitioner. (Doc. No. 7-5.)

Trumbull County is within this Court's geographic jurisdiction.  See 28 U.S.C. § 115(a).

Accordingly, this Court has jurisdiction over Henderson's § 2254 petition.

9

### B.    Exhaustion and Procedural Default – Grounds Two Through Six

A state prisoner must exhaust all available state remedies or have no remaining state remedies available prior to seeking review of a conviction via federal habeas corpus. *See* 28 U.S.C. § 2254(b) and (c); *Castille v. Peoples*, 489 U.S. 346, 349 (1989); *Riggins v. McMackin*, 935 F.2d 790, 793 (6th Cir. 1991). If any state procedures for relief remain available, the petitioner has not exhausted his state remedies, and a federal court must dismiss his petition. *See Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994). The exhaustion requirement is properly satisfied when the highest court in the state in which petitioner was convicted has been given a full and fair opportunity to rule on all the petitioner's claims. *See Manning v. Alexander*, 912 F.2d 878, 881-83 (6th Cir. 1990).

Similarly, a federal court may not review "contentions of federal law . . . not resolved on the merits in the state proceeding due to respondent's failure to raise them there as required by state procedure." *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977). When a petitioner "has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).; *see also See Gray v. Netherland*, 518 U.S. 152, 162 (1996).

If the State argues that a petitioner has procedurally defaulted, the Court must conduct a four-step analysis to determine whether the petitioner has indeed defaulted

10

and, if so, whether the procedural default may be excused:

> First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule. . . . Second, the court must decide whether the state courts actually enforced the state procedural sanction. . . . Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim. . . . This question generally will involve an examination of the legitimate state interests behind the procedural rule in light of the federal interest in considering federal claims. . . . [Fourth, if] the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate . . . that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).

As a general principle, this Court can dismiss a habeas petition without prejudice to allow the petitioner to return to state court to pursue his available remedies.  *See* 28 U.S.C. § 2254(c); *Rose v. Lundy*, 455 U.S. 509 (1982).  However,  if there are no longer any state court remedies still available to Petitioner with respect to an unexhausted claim, this Court may deem the claim procedurally defaulted.  *See Gray*, 518 U.S. at 161-62 ("Because the exhaustion requirement 'refers only to remedies still available at the time of the federal petition,' *Engle v. Isaac*, 456 U.S. 107, 125, n.28 (1982), it is satisfied 'if it is clear that [the habeas petitioner's] claims are now procedurally barred under [state] law,' *Castille*[, 489 U.S. at 351].").

11

1.    **Grounds Two (Failure to Grant a Continuance) and Three (Ineffective Assistance of Counsel - Failure to Provide Timely Discovery to Petitioner)**

In his second ground for relief, Petitioner contends that the trial court deprived him of his fundamental constitutional rights when it declined his request for a continuance to allow him to review discovery from the State prior to trial.  In his third ground for relief, Petitioner argues that his trial counsel was ineffective in failing to provide Henderson with the discovery in sufficient time before trial to allow Henderson to review the evidence and decide whether to proceed to trial.  Petitioner raised these arguments on appeal., and the state appellate court rejected them as not appropriate for direct appeal:

> [With respect to his ineffective assistance of counsel claim,] appellant is unable to carry [the burden of demonstrating that counsel's allegedly deficient performance caused him prejudice] because the record does not demonstrate that appellant would have chosen not to go forward with the trial if he had received a copy of discovery sooner.  For this reason, his claim of ineffective assistance of counsel cannot succeed on direct appeal.  Rather, it must be brought by way of post[-]conviction relief, due to the numerous matters outside the record necessary to make a decision.
>
> *    *    *
>
> The sole basis for the continuance request was so that appellant could review the discovery materials, that he acknowledged he received at the very least a few days before his trial, in order for him to decide whether to take the plea offer.  For the reasons stated in our discussion concerning appellant's claim of ineffective assistance of trial counsel, the record is silent on too many issues to demonstrate an abuse of discretion as to the denial of the continuance request.

*Henderson*, 2012 WL 604475 at * 10.

12

The state appellate court relied on the well settled tenet of Ohio law that, where a defendant's claim "concerns a matter outside the record . . . an appellate court cannot consider it on direct appeal because the court can only consider matters contained in the record." *State v. Richmond*, No. 97616, 2012 WL 2047991, \*1 (Ohio App. Ct. July 12, 2012). Rather, under Ohio law, the appropriate forum for a claims that rely on evidence *dehors* the trial record is a petition for post-conviction relief under Ohio Rev. Code 2953.21. *See State v. Cooperrider*, 448 N.E.2d 452, 454, 4 Ohio St.3d 226, 228 (Ohio 1983).

In this case, Henderson did not file a petition for post-conviction relief in state court. Accordingly, he has not exhausted either his claim regarding the trial court's denial of his request for a continuance or his claim of ineffective assistance of trial counsel on the basis of his trial counsel's failure to provide him with discovery. Further, these grounds for relief are also procedurally defaulted.[1] Ohio's post-conviction relief statute generally requires defendants to file a motion for post-conviction relief within 180 days "after the date on which the trial transcript is filed in the court of appeals in the direct appeal." Ohio Rev. Code § 2953.21(c)(2). Here, the transcripts of Henderson's trial were filed in the state appellate court on September 13, 2010, and his 180-day period has long expired. (Doc. No. 7-9.) The statute contains two exceptions to the 180-day time limit. One requires the defendant to show that he was "unavoidably prevented from discovery of the facts" upon which his claim for relief was based or that

---

[1] The State does not argue that Henderson's second and third grounds for relief are procedurally defaulted. This Court, however, may raise the issue *sua sponte*. *See, e.g., Lorraine v. Coyle*, 291 F.3d 416, 426 (6th Cir. 2002).

13

his claim is based on a newly-recognized federal or state right that applies retroactively.
*See* Ohio Rev. Code § 2953.23(b)(2).  Given that Henderson  raised the issues of his
request for a continuance and his  trial counsel's ineffectiveness as early as December
2010, he cannot now claim that he only recently discovered the facts on which they are
based.  Nor does he allege that these claims are based on a newly-recognized federal
or state right.  Accordingly, this first exception will not permit Henderson to raise these
claims in a state court post-conviction proceeding.  Further, the second exception –
which permits late filing where the defendant's claim is based on results of DNA testing,
*see* Ohio Rev. Code § 2953.23(b)(2) – clearly does not apply in this case.  Given that
neither exception would apply to excuse Henderson's untimely filing of a motion under
§ 2953.21, it would be futile for him to return to state court to pursue these claims.
Accordingly, they are procedurally defaulted.  *See, e.g., Rolling v. Muiligan*, No. 1:12-
CV-1007, 2012 WL 3961214 (N.D. Ohio Sept. 10, 2012) (Gaughan, J.) (finding
procedural default where the petitioner's state court motion for post-conviction relief
would be untimely and neither exception would apply to excuse the untimeliness).
Petitioner's second and third grounds for relief should be dismissed with prejudice.

> ### 2.    Grounds Four (Viewed by Jury in Restraints) and Five (Prosecutorial Misconduct)

In his fourth ground for relief, Petitioner alleges that the trial court violated his
constitutional rights by allowing the jury to view him in unnecessarily heavy restraints.
In his fifth ground for relief, Petitioner contends that the prosecutor committed
misconduct by improperly shifting the burden of proof and misstating facts during his
closing argument.  Although Petitioner raised these assignments of error in his direct

14

appeal, he did not include them in his memorandum in support of jurisdiction in the

Ohio Supreme Court.  Accordingly, he has not presented these grounds for relief to the

highest state court that can consider these claims, and, thus, they are not exhausted.

These claims are also procedurally defaulted.  Because these claims arise out of

the record of the proceedings in the trial court, *res judicata* precludes Petitioner from re-

asserting them in any forum.  *See* [State v.Fischer, 942 N.E.2d 332, 342, 128 Ohio](#)

[St.3d 92, 101 (Ohio 2010)](#) (noting that the law-of-the-case doctrine "provides that 'the

decision of a reviewing court in a case remains the law of that case on the legal

questions involved for all subsequent proceedings in the case at both the trial and

reviewing levels'") (quoting [Nolan v. Nolan, 462 N.E.2d 410, 412, 11 Ohio St.3d 1, 3](#)

[(Ohio 1984)](#)); [State v. Cole, 443 N.E.2d 169, 171, 2 Ohio St.3d 112, 113 (Ohio 1982)](#);

[State v. Perry, 226 N.E.2d 104, 10 Ohio St.2d 175 (Ohio 1967)](#) (holding that *res*

*judicata* bars a criminal defendant from raising in post-conviction proceedings those

claims that could have been raised on direct appeal).  The Sixth Circuit has determined

that "the application of *res judicata* is an adequate and independent state ground

justifying foreclosure of constitutional claims in habeas." [Mason v. Mitchell, 320 F.3d](#)

[604, 628 (6th Cir. 2003)](#).

Petitioner does not offer any argument regarding cause for, or prejudice resulting

from, his procedural default of his fourth and fifth grounds for relief.  Further, other than

generally asserting that the facts of his case would support a conviction for reckless

homicide, Henderson does not assert that he is actually innocent of the crimes for

which he was convicted.  Accordingly, there is no excuse for, or exception to, his

procedural default, and these claims are barred from federal habeas review.

### 3.     Sixth Ground for Relief - Ineffective Assistance of Trial Counsel (Failure to Request Reckless Homicide Instruction)

In his sixth ground for relief, Petitioner contends that his trial counsel was ineffective in failing to request a jury instruction on reckless homicide.  Petitioner raised this argument as a basis for asserting a claim of ineffective assistance of appellate counsel in his Rule 26(B) Application.  He did not raise the underlying ineffective-assistance-of-trial-counsel claim as an independent basis for relief in state court. Accordingly, this claim is not exhausted.[2]  Further, because the error at issue arises out of the record of proceedings in the trial court, Petitioner could have raised it on direct appeal.  He failed to do so and, under Ohio law, *res judicata* – an independent and adequate state ground –  now prohibits him from raising the issue in any post-conviction proceeding.  *See* Cole, 443 N.E.2d at 171, 2 Ohio St.3d at 113; Perry, 226 N.E.2d at 104, 10 Ohio St.2d at 175.  Because Petitioner can no longer raise this claim in state court, it is procedurally defaulted.

To the extent that Petitioner argues that his appellate counsel's ineffective assistance constitutes cause for his procedural default of this ground for relief, such an argument would fail.  It is well established that "the exhaustion doctrine . . . generally requires that a claim of ineffective assistance be presented to the state courts as an

---

[2] Presentation of claims in the context of ineffective assistance of counsel is not sufficient to "fairly present" them as independent grounds to the state courts. *See, e.g.,* Wagner v. Smith, 581 F.3d 410, 417-18 (6th Cir. 2009) (finding that the petitioner failed to exhaust a prosecutorial misconduct claim where he presented it to the state courts in the context of ineffective assistance of counsel, noting that doing so "did not present the *prosecutorial misconduct* claim to the state court in the same legal and factual terms as Petitioner did before this Court") (emphasis in original).

16

independent claim before it may be used to establish cause for a procedural default."

*Murray v. Carrier*, 477 U.S. at 488-89.  Here, although Petitioner raised this claim in the context of ineffective assistance of appellate counsel in his Rule 26(B) Application, he did not appeal the state appellate court's decision denying that application. Accordingly, the ineffective-assistance-of-appellate-counsel claim on which Petitioner might rely to excuse his procedural default of the underlying ineffective-assistance-of-trial-counsel claim is, itself, not exhausted.  Further, Petitioner may no longer appeal the state appellate court's denial of his Rule 26(B) Application,  as Rule 7.01(A)(4)(c) of the Rules of Practice of the Supreme Court of Ohio specifically precludes the filing of delayed appeals in "appeals brought pursuant to" Rule 26(B).  Accordingly, the ineffective-assistance-of-appellate-counsel claim on which Petitioner might rely to excuse his procedural default of the underlying ineffective-assistance-of-trial-counsel claim is also procedurally defaulted, and cannot serve as cause to excuse Petitioner's default of his ineffective-assistance-of-trial-counsel claim.  *See Murray*, 477 U.S. at 488. Thus, Petitioner's sixth ground for relief is barred from habeas review, and should be dismissed with prejudice.

## V. The Merits of Petitioner's Remaining Claim

### A.    Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ( "AEDPA") altered the standard of review that a federal court must apply when deciding whether to grant a writ of habeas corpus.  As amended, 28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a
> person in custody pursuant to the judgment of a State court

> shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A writ of habeas corpus may issue only if the state court's decision is contrary to clearly established federal law or was based on an unreasonable determination of the facts in light of the evidence.  *See Carey v. Musladin*, 549 U.S. 70 (2006); *Williams v. Taylor*, 529 U.S. 362, 379-90 (2000).  Law is "clearly established" only by holdings of the Supreme Court, not its dicta, and the law must be clearly established at the time of the petitioner's conviction.  *See Carey*, 549 U.S. at 74.

Courts must give independent meaning to the phrases "contrary to" and "unreasonable application of" in § 2254(d)(1):

> Section 2254(d)(1) defines two categories of cases in which a state prisoner may obtain federal habeas relief with respect to a claim adjudicated on the merits in state court. Under the statute, a federal court may grant a writ of habeas corpus if the relevant state-court decision was either (1) "*contrary to* . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "*involved an unreasonable application of* . . . clearly established Federal law, as determined by the Supreme Court of the United States."

*Williams*, 529 U.S. at 404-05 (emphasis added by the quoting court).  A decision is "contrary to" clearly established federal law if it reaches a conclusion opposite to that reached by Supreme Court holdings on a question of law or if it faces a set of facts materially indistinguishable from relevant Supreme Court precedent and still arrives at

18

an opposite result. *Id.* at 405-06.   A decision involves an unreasonable application of federal law only if the deciding court correctly identifies the legal principle at issue and unreasonably applies it to the facts of the case at hand.  *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003).  "In order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous.  The state court's application must have been objectively unreasonable."  *Id.* at 520-21 (internal citations and quotation marks omitted).  This Court applies this deferential standard of review to the state courts' rulings on Petitioner's  grounds for relief.

**B.     First Ground for Relief - Sufficiency of the Evidence**

In his first ground for relief, Petitioner argues that the evidence at his trial was not sufficient to support his convictions for aggravated murder, murder, possessing a weapon while under a disability and felonious assault.  A petitioner who claims that the evidence at trial was insufficient for a conviction must demonstrate that, "after viewing the evidence in the light most favorable to the prosecution, [no] rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."

*Jackson v. Virginia*, 443 U.S. 307, 319 (1979) ; *Scott v. Mitchell,* 209 F.3d 854, 885 (6th Cir. 2000).  The role of the reviewing court in considering such a claim is limited:

> A reviewing court does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor has been observed by the trial court.  It is the province of the factfinder to weigh the probative value of the evidence and resolve any conflicts in testimony.  An assessment of the credibility of witnesses is generally beyond the scope of federal habeas review of sufficiency of evidence claims.  The mere existence of sufficient evidence to convict therefore defeats a petitioner's claim.

19

*Matthews v. Abramajtys*, 319 F.3d 780, 788-89 (6th Cir. 2003) (internal citations omitted). Finally, "'attacks on witness credibility are simply challenges to the quality of the government's evidence and not to the sufficiency of the evidence.'" *Martin v. Mitchell*, 280 F.3d 594, 618 (6th Cir. 2002) (quoting *United States v. Adamo*, 742 F.2d 927, 935 (6th Cir.1984)).

In its decision affirming Henderson's conviction and sentence, the state appellate court rejected his argument that the testimony of Yager – the witness whose testimony provided much of the State's case against Henderson – was too unreliable to be considered, and concluded that the State offered sufficient evidence to support Henderson's conviction:

> Under a "sufficiency" analysis, questions of weight and credibility are not considered because the sole issue is whether the state presented some evidence as to each element of the charged offenses. Therefore, this court must include the testimony of Marcus Yager in deciding if the evidence in the present case met the cited standard. Furthermore . . . Yager's testimony showed that appellant had possession of the AK-47 when he pulled in front of Brittnay McCoy's home, and that he then aimed it at the residence and fired it at least 25 to 30 times. In addition, the remainder of the state's evidence demonstrated that, as a result of the shots from the AK-47, two persons died and a third was seriously wounded.
>
> Taken as a whole, the trial transcript establishes that the state presented considerable evidence upon which a juror could readily find beyond a reasonable doubt that each element under the six remaining charges had been proven. Thus, since the evidence of the state was legally sufficient, appellant's second assignment of error does not have merit.

*Henderson*, 2012 WL 604475 at **8-9.

20

Here, Henderson argues that there was insufficient evidence to support his convictions because the State failed to produce evidence other than Yager's testimony to prove that Petitioner used a firearm to fire into McCoy's residence.  He contends that it was "irrational" for the jurors to believe Yager's testimony – which was the only evidence that Petitioner fired a weapon into the home – because it was not credible.[3] Petitioner's argument does not merit habeas relief.  Yager's credibility – and the weight of his testimony – were outside the scope of the state appellate court's consideration of Petitioner's claim of insufficient evidence.  *Martin*, 280 F.3d at 618.  Rather, the state appellate court properly considered all of the evidence in the light most favorable to the State and determined that "the state presented considerable evidence upon which a jury could readily find beyond a reasonable doubt that each element under the six remaining charges had been proven."  *Henderson*, 2012 WL 604475 at *9.  The standard of review applied by the state appellate court coincides with the standard for sufficiency of the evidence set forth in *Jackson*.  Henderson points to no federal legal precedent requiring the state appellate court to engage in the evidence-weighing that he requests.  Accordingly, the state court reasonably applied clearly established case

---

[3] Henderson also argues that the jury's verdict in his case was inconsistent, as the jury convicted him of murder, aggravated murder, possessing a weapon while under a disability, and felonious assault, but acquitted him on the charge of firing a weapon into a residence and found against the State on the firearm specification. (Doc. No. 12 at 2.)  According to Henderson, this inconsistency demonstrates that there was insufficient evidence to support his convictions.  He first raised this argument in his *pro se* memorandum in support of jurisdiction to the Ohio Supreme Court and, thus, to the extent that Henderson asserts this inconsistency as a separate basis for habeas relief, the claim is likely exhausted. (Doc. No. 7-17.)  Regardless, in addition to being irrelevant to the standard for weighing a sufficiency-of-the-evidence claim, inconsistency in jury's verdict is "not a sufficient reason for setting it aside."  *Harris v. Rivera*, 454 U.S. 339, 345 (1984).

law when it considered Yager's testimony in determining whether there was sufficient evidence to convict Petitioner, and there is no basis for this Court to conclude that the state court decision in this case was contrary to, or involved an unreasonable application of, clearly established federal law.  Henderson's first ground for relief lacks merit.

### VI. Conclusion.

For the reasons given above, the petition should be dismissed with prejudice.


Date: July 9, 2014                                          /s/ Nancy A. Vecchiarelli
                                                            United States Magistrate Judge

### OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111.**